IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> V.<br><br>ESSROC CEMENT CORPORATION<br><br>   Defendant. | Civil Action No.<br><br>4:07-cv-0157-JDT-WGH |

### COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General and through its undersigned attorneys, acting at the request of and on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), alleges as follows:

### NATURE OF ACTION

1. This is a civil action brought pursuant to Section 113(b) of the Clean Air Act, as amended ("CAA" or the "Act"), 42 U.S.C. § 7413(b), for injunctive relief and civil penalties against Defendant Essroc Cement Corporation ("ESSROC") for violations of the Act, the National Emission Standards for Hazardous Air Pollutants for the Portland Cement Manufacturing Industry (the "portland cement NESHAP regulations"), codified at 40 C.F.R. Part 63, Subpart LLL; the Indiana State Implementation Plan ("SIP") adopted pursuant to Section 110 of the Act, 42 U.S.C. § 7410; and provisions of the federally enforceable

operating permit issued to ESSROC pursuant to Subchapter V of the Act, 42 U.S.C. § 7661 et <u>seq.</u> The violations alleged herein have occurred or are occurring at ESSROC's portland cement manufacturing facility in Speed, Indiana.

<u>JURISDICTION, VENUE AND AUTHORITY</u>

2. This Court has jurisdiction of the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331,1345 and 1355.

3. Venue is proper in this district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), 1391(c) and 1395(a), because it is the judicial district in which ESSROC's Speed, Indiana facility is located and in which the alleged violations took place.

4. The Attorney General is authorized to bring this action pursuant to Sections 113(b) and 305 of the Act, 42 U.S.C. §§ 7413(b) and 7605, and 28 U.S.C. §§ 516 and 519.

<u>NOTICE</u>

5. The United States has provided notice of this action to the Indiana Department of Environmental Management ("IDEM"), in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b).

<u>DEFENDANT</u>

6. Defendant ESSROC is a corporation organized under the laws of the Commonwealth of Pennsylvania. ESSROC owns and operates a facility for the manufacture of portland cement located in Clark County, at U.S. Highway 31, Speed, Indiana 47172.

## STATUTORY AND REGULATORY BACKGROUND

7. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(i) of the CAA, 42 U.S.C. § 7401(b)(i).

8. On November 5, 1990, the Act was amended to further regulate the emission of hazardous air pollutants. As amended, Section 112(a) of the Act, 42 U.S.C. § 7412(a), defines "major source" to mean any stationary source (or group of sources located in a contiguous area and under common control) that emits or has the potential to emit, in the aggregate, 10 tons per year or more of any hazardous air pollutant (as such pollutants are listed pursuant to Section 112(b) of the Act) or 25 tons per year or more of any combination of hazardous air pollutants. In the same subsection, "area source" is defined to mean any stationary source of hazardous air pollutants that is not a major source.

9. Section 112(d) of the Act as amended, 42 U.S.C. § 7412(d), directs U.S. EPA to promulgate regulations establishing emission standards for each category or subcategory of major sources and area sources of hazardous air pollutants.

10. Pursuant to this direction, on June 14, 1999, U.S. EPA promulgated National Emission Standards for Hazardous Air Pollutants ("NESHAP") for the Portland Cement Manufacturing Industry. These portland cement NESHAP regulations are codified at 40 C.F.R. Part 63, Subpart LLL. The general NESHAP provisions in 40 C.F.R. Part 63, Subpart A, which provide notification, record keeping and reporting requirements, are also applicable to sources covered by Subpart LLL.

11. The compliance date for owners and operators of existing

sources subject to the portland cement NESHAP regulations was June 10, 2002, 40 C.F.R. § 63.1351.

12. Pursuant to 40 C.F.R. § 63.1340(b), "affected sources" are those units within portland cement manufacturing facilities to which the requirements of the portland cement NESHAP regulations apply. "Affected sources" include the following units at major sources: kilns, in-line kiln/raw mills, raw mills, raw material dryers, raw material, clinker or finished product storage bins, conveying system transfer points, bagging systems and bulk loading or unloading systems. Pursuant to 40 C.F.R. § 63.1340(d), the owners or operators of affected sources are subject to Title V permitting requirements.

13. Emission and operating limits for affected sources in the portland cement NESHAP regulations are found at 40 C.F.R. §§ 63.1342 et seq. and are summarized in tabular format at 40 C.F.R. § 63.1342.

14. The portland cement NESHAP also prescribes test methods and procedures for determining initial compliance with emission limits, and requires written operation and maintenance plans which include certain monitoring requirements.

15. Subchapter V of the Clean Air Act, 42 U.S.C. § 7661 et seq. provides a major emission source operating permit program (hereafter the "Title V program").

16. On May 22, 1995, U.S. EPA published a proposal to grant interim approval of Indiana's Title V program, 60 Fed. Reg. 27064. On November 14, 1995, U.S. EPA promulgated final interim approval of Indiana's Title V program, 60 Fed. Reg. 57188, which became effective on December 14, 1995. Indiana's Title V program is currently codified in the State regulations at 326 Indiana Administrative Code ("IAC")

2-7.

17.  On June 15, 2004, the Indiana Department of Environmental Management ("IDEM") issued a Title V permit, Number T019-6016-00008,(the "Permit") to ESSROC for its Speed, Indiana facility. The Permit had an immediate effective date.

18.  ESSROC's Title V Permit incorporates and makes applicable to the permittee the provisions of the portland cement NESHAP. Permit, Sections D.2.3, D.3.5 (pp. 47 and 56); see Permit Technical Support Document, p. 23; 326 IAC 20-27-1.

19.  Pursuant to Section 502(a) of the Act, 42 U.S.C. § 7661a(a), after the date a Title V permit program is approved by U.S. EPA, it is unlawful to operate a major source except in compliance with a permit issued pursuant to the approved program.

20.  Section 110 of the CAA, 42 U.S.C. § 7410, requires each State to adopt, and submit to U.S. EPA for approval, a State Implementation Plan ("SIP") which, among other things, contains emission limitations applicable to sources in specific air quality control regions within the State.

21.  Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, the State of Indiana has adopted and submitted to U.S. EPA various regulations which have been approved by U.S. EPA and constitute the SIP for the State. On April 16, 1997, U.S. EPA approved 326 IAC 5-1-2, as part of the federally enforceable SIP for Indiana. 62 Fed. Reg. 18521.

22.  SIP opacity limits for sources in ESSROC'S air quality region are found at 326 IAC 5-1-2(1)(A) and (B). These SIP provisions are also incorporated in ESSROC's Permit and are federally enforceable. Permit Section C.1, p. 30.

23.  Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(i), on February 13, 2002, EPA provided written notice to ESSROC that it violated or was in violation of relevant SIP requirements or prohibitions.

24.  Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or temporary injunction when a person is in violation of any requirement or prohibition in the CAA or in any applicable implementation plan or permit.

25.  Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), persons who violate the Act or an applicable implementation plan or permit are liable for a civil penalty of up to $25,000 per day for violations occurring prior to January 30, 1997, up to $27,500 per day for violations occurring between January 30, 1997 through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.  Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3791 note; 69 Fed. Reg. 7121 (February 13, 2004).

26.  Section 113(e)(2) of the Act, 42 U.S.C. § 7413(e), provides that where EPA has notified the source of a violation and makes a *prima facie* showing that the conduct or events giving rise to the violation are likely to have continued or recurred past the date of notice, the days of violation shall be presumed to include the date of such notice and each and every day thereafter until the violator establishes that continous compliance has been achieved.

## GENERAL ALLEGATIONS

27. ESSROC's Speed, Indiana facility is a "major source" of pollution as that term is defined in Sections 112(a) and 501(2) of the Act, 42 U.S.C. §§ 7412(a) and 7661(2).

28. ESSROC is a "person" within the meaning of Sections 113(b) and 302(e) of the Act, 42 U.S.C. § 7413(b) and 7602(e).

29. ESSROC is an "owner or operator" of an affected facility within the meaning of 40 C.F.R. § 60.2.

30. ESSROC'S Speed plant is a "stationary source" within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b).

31. At all relevant times, ESSROC has operated "affected sources" as designated in 40 C.F.R. § 63.1340(b), at its Speed plant.

32. Pursuant to 40 C.F.R. § 63.1350, Essroc has installed and operates a continuous opacity monitoring ("COM") system and submits reports to U.S. EPA on discharges of excess emissions into the atmosphere from covered sources.

## FIRST CLAIM FOR RELIEF
### Opacity Violations Above Ten Per Cent

33. The allegations of Paragraphs 1 through 32 are realleged and incorporated herein by reference.

34. 40 C.F.R. § 63.1347 prohibits the owner or operator of each existing raw mill at a portland cement manufacturing facility which is a major source from discharging any gases from the mill sweep or air separator air pollution control device ("PCD") which exhibit opacity in excess of ten per cent.

35. ESSROC'S Title V operating Permit provides, at Section D.3.5(a)(5), the following:

> When the Loesche raw mill (EU 14) is operating and the kiln #2 is not operating, the visible emissions from

-7-

> the ESP (electrostatic precipitator] controlling the Loesche raw mill shall not exceed 10 per cent opacity.

36. ESSROC's Title V Permit provides further, at Section D.3.5(a)(4), the following:

> When kiln #2 and the Loesche raw mill (EU 14) are both operating, the visible emissions from the ESP (electrostatic precipitator) controlling the Loesche raw mill and kiln #2 shall not exceed ten percent (10%) opacity.

37. At various times from at least June 14, 2002 and continuing after June 15, 2004, Essroc discharged gases into the atmosphere from the air pollution control device (the ESP) at its raw mill which exhibited greater than ten per cent opacity, in violation of the portland cement NESHAP at 40 C.F.R. § 63.1347, and after June 15, 2004, in violation of its Permit as it incorporates the relevant NESHAP provision.

38. For each violation referred to in the preceding paragraph, ESSROC is subject to injunctive relief and civil penalties of up to $27,500 a day for violations occurring through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.

### SECOND CLAIM FOR RELIEF
Opacity Violations Above Twenty Per Cent

39. The allegations of Paragraph 1 through 32 are realleged and incorporated herein by reference.

40. 40 C.F.R. § 63.1343(b(2) prohibits the owner or operator of an existing kiln at a facility that is a major source from discharging into the atmosphere any gases which exhibit greater than twenty per cent opacity.

41. ESSROC'S Title V operating Permit provides, at Section D.3.5(a)(6), the following:

> When the kiln #2 is operating and Loesche raw mill (EU 14) is not operating, the visible emissions from the ESP

controlling kiln #2 shall not exceed 20% opacity.

42. At various times from at least June 14, 2002 and continuing after June 15, 2004, ESSROC discharged into the atmosphere, from the ESP controlling kiln #2, gases which exhibited greater than twenty per cent opacity, in violation of the portland cement NESHAP at 40 C.F.R. § 63.1343(b)(2), and after June 15, 2004, in violation of its Permit as it incorporates the relevant NESHAP provision.

43. For each violation referred to in the foregoing paragraph, ESSROC is subject to injunctive relief and civil penalties of up to $27,500 per day for violations occurring through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.

THIRD CLAIM FOR RELIEF
Baghouse Temperature Exceedances at Kiln #1

44. The allegations of Paragraphs 1 through 32 are realleged and incorporated herein by reference.

45. 40 C.F.R. § 63.1344(a) provides that the owner or the operator of a kiln subject to a dioxin/furan ("D/F") limitation under 40 C.F.R. § 63.1343 must operate the kiln so that the temperature of the gas at the inlet to the kiln particulate matter control device ("PMCD") does not exceed the applicable temperature limit specified in 40 C.F.R. § 63.1344(b).

46. ESSROC'S kiln #1 is subject to a D/F emission limit under 40 C.F.R. § 63.1343.

47. Under 40 C.F.R. § 63.1344(b), the temperature limit for affected sources subject to the limits of 40 C.F.R. § 63.1344(a) is determined in accordance with 40 C.F.R. § 63.1349(b)(3)(iv).

48. In a performance test conducted pursuant to 40 C.F.R. § 63.1343(b)(3)(iv), ESSROC established that the baghouse inlet

temperature limit for the baghouse at kiln #1 was 450.8 degrees Fahrenheit, based on the average of the run average temperature.

49. ESSROC's Title V Permit provides, at Section D.3.5(a)(8):

> The kilns shall operate so that the three hour rolling average PMCD inlet temperature is no greater than the temperature established at the performance test.

50. On various occasions from at least January 1, 2003 and continuing after June 15, 2004, ESSROC exceeded the applicable 450.8 degrees Fahrenheit limit at the inlet to the control device at kiln #1, in violation of the portland cement NESHAP at 40 C.F.R. § 63.1344(a) and, after June 15, 2004, in violation of its operating Permit as it incorporates the relevant NESHAP provision.

51. For each violation referred to in the preceding paragraph, ESSROC is subject to civil penalties of up to $27,500 per day for violations occurring through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.

## FOURTH CLAIM FOR RELIEF
### Failure To Comply With Operation and Maintenance Plan Monthly Visible Emission Tests

52. The allegations of Paragraphs 1 through 32 are realleged and incorporated herein by reference.

53. 40 C.F.R. § 63.1350(j) requires that portland cement facilities subject to opacity limits monitor opacity in accordance with operation and maintenance ("O & M") plans developed in accordance with 40 C.F.R. § 63.1350(a).

54. Under 40 C.F.R. § 63.1350(a), O & M plans must include the requirement that monthly visible emission tests be conducted at each affected source while it is in operation.

55. ESSROC's O & M plan for its covered emission units

includes monthly visible emission test requirements.

56. Pursuant to 40 C.F.R. § 63.1350, failure to comply with any provision of the applicable O & M plan is a violation of the NESHAP.

57. ESSROC's Title V Permit provides, at Section D.3.15 (b)(2)(A), as follows:

> The Permittee shall conduct a monthly 1-minute visible emissions test of each affected source, in accordance with 40 C.F.R. 60, Appendix A, Method 22. The test must be conducted while the affected source is in operation.

58. On numerous occasions from at least January 1, 2003 and continuing after June 15, 2004, ESSROC failed to conduct monthly visible emission checks at various sources, in violation of the portland cement NESHAP at 40 C.F.R. § 63.1350(a) and (j) and, after June 15, 2004, in violation of its Permit as it incorporates the relevant NESHAP provisions.

59. For each violation referred to in the foregoing paragraph, ESSROC is subject to civil penalties of up to $27,500 per day for violations occuring through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.

FIFTH CLAIM FOR RELIEF
Failure to Comply With Operation and Maintenance Plan
(Daily Visible Emission Checks)

60. The allegations of Paragraphs 1 through 32 are realleged and incorporated herein by reference.

61. 40 C.F.R. § 1350(e) requires the owner or operator of a raw mill or finish mill to monitor opacity by conducting daily visual emissions observations of the mill sweep and air separator PCMDs of these affected sources. This requirement must be incorporated in the source's O & M plans developed in accordance with 40 C.F.R.

§ 63.1350(a).

62. ESSROC's O & M plan for its covered emission units includes the daily emission test requirement.

63. 40 C.F.R. § 63.1354(b)(9) requires each owner or operator to submit semiannually a summary report which contains information relating, among other things, to all failures to comply with any provision of the applicable O&M plan.

64. ESSROC's Permit provides, at Section D.3.15(c), as follows:

> [T]he Permittee shall monitor opacity from the raw mills by conducting daily emissions observations of the mill sweep and air separator particulate matter control devices (PMCDs), in accordance with the procedures of 40 C.F.R. 60, Appendix A, Method 22.

65. In 2003 and 2004, ESSROC submitted semiannual summary reports to U.S. EPA listing ESSROC's failures to conduct daily visible emission checks at various emission points at its facility.

66. At various times from at least January 1, 2003 and continuing after June 15, 2004, ESSROC failed to conduct daily visible emission checks at its raw mill ESP, in violation of the portland cement NESHAP and, after June 15, 2004, in violation of its Title V permit as it incorporated the provisions of the NESHAP.

67. For each violation referred to in the preceding paragraph, ESSROC is subject to civil penalties of up to $27,500 a day for violations occurring through March 15, 2004 and $32,500 per day for violations occurring after March 15, 2004.

### SIXTH CLAIM FOR RELIEF
Discharge of Excess Particulate Matter From Kiln #2

68. The allegations of paragraphs 1 through 32 are realleged and incorporated herein by reference.

69. 40 C.F.R. § 63.1343(b)(i) provides that no owner or operator of certain kilns or in-line kilns/raw mills shall discharge into the atmosphere gases from the affected source that contain particulate matter ("PM") in excess of 0.30 pounds per ton of feed (dry basis) to the kiln.

70. Pursuant to 40 C.F.R. § 63.1349(b)(1), initial compliance with the foregoing requirement is to be demonstrated by conducting a performance test as specified in 40 C.F.R. § 63.1349(b)(1)(i)-(iv).

71. The limits and requirements in 40 C.F.R. §§ 63.1343(b(1) and 63.1349(b)(1) are applicable to kiln #2 at the Essroc facility.

72. On November 7, 2002 and continuing on November 12, 2002, ESSROC conducted an initial performance test at its kiln #2. The test demonstrated that gases discharged from kiln #2 contained particulate matter in excess of 0.30 pounds per ton of feed (dry basis) to the kiln.

73. ESSROC'S discharge of PM in excess of 0.30 lb. per ton of feed (dry basis) to the kiln constitutes a continuing violation of 30 C.F.R. § 63.1343(b)(i) for which Essroc is subject to civil penalties of up to $27,500 per day for violations occurring through March 15, 2004 and up to $32,500 per day thereafter for violations occurring after March 15, 2004.

### SEVENTH CLAIM FOR RELIEF
### SIP Violations

74. The allegations of paragraphs 1 through 32 are realleged and incorporated herein by reference.

75. The Indiana SIP, at 326 IAC 5-I-2.1(A), provides that

visible emissions at a source or facility shall not exceed an average of 40 per cent opacity in 24 consecutive readings.

76.  The Indiana SIP, at 326 IAC 5-I-2.1(B), provides that visible emissions at a source or facility shall not exceed 60 per cent opacity for more than a cumulative total of 15 minutes in a six-hour period.

77.  At various times from at least December 2000 and continuing after June 15, 2004, visible emissions at the stack for ESSROC's kiln #2/raw mill exceeded 40 per cent opacity for at least one six minute average, in violation of the Indiana SIP provision at 326 IAC 5-1-2.1 (A) and, after June 15, 2004, in violation of ESSROC's Title V Permit, which incorporates the relevant SIP provisions.

78.  At various times from at least December 2000 and continuing after June 15, 2004, opacity at the stack for ESSROC's kiln #2/raw mill was greater than 60 per cent for at least 15 minutes within a six hour period, in violation of the Indiana SIP provision at 326 IAC 5-1-2.1(B) and, after June 15, 2004, in violation of ESSROC'S Title V Permit, which incorporates the relevant SIP provisions.

79.  For each violation referred to in the preceding two paragraphs, ESSROC is subject to civil penalties of up to $27,500 per day through March 15, 2004 and $32,500 per day for each violation after March 15, 2004.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff United States respectfully requests that this Court:

1.  Enjoin ESSROC to come into and maintain compliance with the Clean Air Act, the portland cement NESHAP, the Indiana SIP and its Title V Permit, as applicable.

2. Assess civil penalties of up to $27,500 per day for each violation by ESSROC of the Clean Air Act, the portland cement NESHAP, the Indiana State Implementation Plan and ESSROC's Title V Permit, as applicable, through March 15, 2004 and $32,500 per day for each violation after March 15, 2004.

3. Grant such other and further relief as the court may deem appropriate.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources
    Division

GREGORY L. SUKYS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044-7611
(202) 514-1491

TIMOTHY MORRISON
Acting United States Attorney
Southern District of Indiana

SHELESE WOODS
Assistant United States Attorney
Southern District of Indiana
10 West Market Street
Suite 2100
Indianapolis, Indiana 46204
(317) 226-6333

Of Counsel
Susan Perdomo
Associate Regional Counsel
U.S. Environmental Protection
Agency, Region V